1  **CANDIS MITCHELL**
   California State Bar No.  242797
2  **KATHLEEN N. PEDRO**
   California State Bar No. 253883
3  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
4  San Diego, California  92101-5008
   (619) 234-8467 (tel); (619) 687-2666 (fax)
5  Candis_Mitchell@fd.org

6
   Attorneys for Ms. Vanessa Irene Villaescusa
7

8

9
                    UNITED STATES DISTRICT COURT
10
                  SOUTHERN DISTRICT OF CALIFORNIA
11
                 **(HONORABLE JANIS L. SAMMARTINO)**
12
   UNITED STATES OF AMERICA,          )    Case No.   08cr0255-JLS
13                                     )
                Plaintiff,             )
14                                     )
   v.                                  )    STATEMENT  OF  FACTS  AND
15                                     )    MEMORANDUM  OF  POINTS  AND
   VANESSA IRENE VILLAESCUSA,          )    AUTHORITIES IN SUPPORT OF MOTIONS
16                                     )
                Defendant.             )
17  _____   )

18

19                               **I.**

20                         **BACKGROUND**[1]

21       On January 17, 2008, Ms. Villaescusa was attempting to enter the United States through the Calexico

22  Port of Entry from Mexico. She allegedly informed the officers that she had nothing to declare, had recently

23  purchased her vehicle, and she was returning to the United States after visiting a friend in Mexico. The

24  primary officer observed what he believed to be signs of nervousness on the part of Ms. Villaescusa and

25  referred her and the car to secondary inspection. While in secondary, the vehicle was inspected and packages

26  _____

27       [1]  Unless otherwise stated, the "facts" referenced in these papers come from Government-produced
    documents that the defense continues to investigate.  Ms. Villaescusa does not admit the accuracy of this
28  information and reserves the right to challenge it at any time.

1  of marijuana totaling 45.32 kg were found concealed within the engine compartment, rear seat area, rear

2  driver's side quarter panel, and rear passenger door.

3      Ms. Villaescusa was arrested and allegedly advised of her constitutional rights per <u>Miranda</u>. She is

4  alleged to have waived her rights and agreed to submit to interrogation by Immigration and Customs

5  Enforcement (ICE) agents without the presence of an attorney.  During the 43 minute interrogation, Ms.

6  Villaescusa never admitted knowledge of the marijuana found within the vehicle.

7      On January 31, 2008, Ms. Villaescusa was indicted for intentional importation of 45.32 kg of

8  marijuana in violation of 21 U.S.C. § 952 and 960, and for possession with the intent to distribute in

9  violation of 21 U.S.C. § 841(a)(1).

10      These motions follow.

11  ## II.

12  ## <u>MOTION TO SUPPRESS STATEMENTS</u>

13  **A.    <u>Any Waiver by Ms. Villaescusa of Her Rights Was Not Voluntary, Knowing, and Intelligent.</u>**

14      Ms. Villaescusa's statements must be suppressed based on any waiver of her rights not being

15  voluntary, knowing, and intelligent.  When interrogation occurs without the presence of an attorney and a

16  statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently

17  and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel.

18  <u>Miranda v. Arizona</u>, 384 U.S. 436, 475.  It is undisputed that, to be effective, a waiver of the right to remain

19  silent and the right to counsel must be made knowingly, intelligently, and voluntarily.  <u>Schneckloth v.</u>

20  <u>Bustamonte</u>, 412 U.S. 218, 227 (1973).  To satisfy this burden, the prosecution must introduce evidence

21  sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the nature

22  of the right being abandoned and the consequences of the decision to abandon it." <u>United States v. Garibay</u>,

23  143 F.3d 534, 536 (9th Cir. 1998) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).  The Ninth Circuit

24  has stated that "[t]here is a presumption against waiver." <u>Garibay</u>, 143 F.3d at 536.  The standard of proof

25  for a waiver of these constitutional rights is high. <u>Miranda</u>, 384 U.S. at 475.  <u>See</u> <u>United States v. Heldt</u>,

26  745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every

27  reasonable presumption against waiver of fundamental constitutional rights). Finally, it should be noted that,

28  since <u>Miranda</u> rests on a constitutional foundation, <u>see</u> <u>Dickerson v. United States</u>, 530 U.S. 428, 438

1  (2000), no law or local court rule relieves the government of its burden to prove that Ms. Villaescusa

2  voluntarily waived the <u>Miranda</u> protections.  <u>Miranda</u>, 384 U.S. 475.

3      The validity of the waiver depends upon the particular facts and circumstances surrounding the case,

4  including the background, experience, and conduct of the accused.  <u>Edwards v. Arizona</u>, 451 U.S. 477, 472

5  (1981); <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1983).  <u>See also</u> <u>United States v. Heldt</u>, 745 F.2d at 1277;

6  <u>United States v. McCrary</u>, 643 F.2d 323, 328-29 (9th Cir. 1981).  In <u>Derrick v. Peterson</u>, 924 F.2d 813

7  (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a <u>Miranda</u> waiver requires a two

8  prong analysis:  the waiver must be both (1) voluntary, and (2) knowing and intelligent.  <u>Id.</u> at 820.

9      The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the

10  [Fifth] Amendment . . . ."  <u>Id.</u>  The second prong, requiring that the waiver be "knowing and intelligent,"

11  mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the

12  right being abandoned and the consequences of the decision to abandon it."  <u>Id.</u> at 820-21 (quoting <u>Colorado</u>

13  <u>v. Spring</u>, 479 U.S. 564, 573 (1987)).  This inquiry requires that the Court determine whether "the requisite

14  level of comprehension" existed before the purported waiver may be upheld.  <u>Id.</u>  Thus, "[o]nly if the

15  'totality of the circumstances surrounding the interrogation' reveal *both* an uncoerced choice *and* the

16  requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived."

17  <u>Id.</u> (quoting <u>Colorado v. Spring</u>, 479 U.S. at 573) (emphasis in original) (citations omitted)).

18      The government bears the burden of demonstrating a meaningful <u>Miranda</u> waiver by a preponderance

19  of the evidence.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986).  Moreover, this Court must "indulge every

20  reasonable presumption against waiver of fundamental constitutional rights."  <u>Schell v. Witek</u>, 218 F.3d

21  1017, 1024 (9th Cir. 2000) (en banc) (citations omitted).  Until the prosecution meets its burden of

22  demonstrating through evidence that adequate <u>Miranda</u> warnings were given and that Ms. Villaescusa

23  knowingly and intelligently waived her rights, Ms. Villaescusa's statements must be suppressed.  <u>Miranda</u>,

24  384 U.S. at 479.

25  **B.**    **The Government Bears the Burden of Proving Ms. Villaescusa's Statements Were Made Voluntarily.**

26

27      The government bears the burden to establish that any statements were voluntary.  A defendant is

28  deprived of due process if the Government uses his involuntary confession against him at trial.  *Jackson v.*

1 | *Denny*, 378 U.S. 368, 377 (1964). "In evaluating voluntariness, the 'test is whether, considering the totality

2 | of the circumstances, the government obtained the statement by physical or psychological coercion or by

3 | improper inducement so that the suspect's will was overborne.'" United States v. Male Juvenile, 280 F.3d

4 | 1008, 1022 (9th Cir. 2002) (quoting Derrick v. Peterson, 924 F.2d 813, 817 (9th Cir. 1991)).

5 |      The Government has the burden to prove that a defendant's statements were made independently of

6 | any law enforcement coercion and must do so by a preponderance of the evidence. United States v.

7 | Hanwood, 350 F.3d 1024, 1027 (9th Cir. 2003). The Government has not met its burden in this case, and

8 | absent evidence that the statements were voluntarily made, this Court should suppress Ms. Villaescusa's

9 | statements.

10 | **III.**

11 | **THE INDICTMENT MUST BE DISMISSED BECAUSE THE DRUG STATUTES ARE**
**FACIALLY UNCONSTITUTIONAL**

12 |

13 |      "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase

14 | the prescribed range of penalties to which a criminal defendant is exposed." Apprendi v. New Jersey, 530

15 | U.S. 466 (2000); United States v. Nordby, 225 F.3d 1053, 1057-58 (9th Cir. 2000). Clearly, in enacting 21

16 | U.S.C. §§ 841, 952, and 960, Congress intended to do precisely what Apprendi forbids: it made the type and

17 | quantity of the controlled substance "a sentencing factor, not an element of the crime under [the statutes];

18 | the statute[s are] not susceptible to a contrary interpretation." Nordby, 225 F.3d at 1058. Because there is

19 | no ambiguity, the doctrine of constitutional doubt does not apply. See Miller v. French, 530 U.S. 327, 120

20 | S. Ct. 2246, 2255 (2000).

21 |      The statutes are not severable; they contain no default sentencing provisions. Subsection (a) of each

22 | provision cannot stand alone: they contain no penalty provisions. See Board of Natural Resources v. Brown,

23 | 992 F.2d 937, 948 (9th Cir. 1993) (asking "whether the [a]ct which remains after the unconstitutional

24 | provisions are excised is 'fully operative' . . . whether the unconstitutional provisions are 'functionally

25 | independent' from the remainder of the [a]ct").

26 |      Moreover, this Court may not attempt to uphold the constitutionality of the statutes by attempting

27 | to guess what penalties Congress would have imposed if it had known that §§ 841, 952, and 960 were

28 | unconstitutional. Indeed, even if it thinks that it may have a good idea of what Congress may have intended

1  when it passed the constitutionally infirm legislation, this Court may not legislate penalties into a statute that

2  lacks them to avoid finding the statute unconstitutional.  See United States v. Evans, 333 U.S. 483, 486

3  (1948).  There, the Supreme Court rejected the Government's request "to make [the statute] effective by

4  applying . . . one of the possibilities which seems most nearly to accord with the criminal proscription and

5  the terms of the penalizing provision."  Id.  The Supreme Court refused to "plug the hole in the statute[,]"

6  and concluded that "[t]his is a task outside the bounds of judicial interpretation.  It is better for Congress,

7  and more in accord with its function, to revise the statute than for us to guess at the revision it would make.

8  That task it can do with precision.  We could do no more than make speculation law."  Id. at 495.  If the

9  Supreme Court would not redraft the relatively simple statute in Evans, this Court certainly should not

10  redraft §§ 841, 952, and 960 to include penalty provisions.

11          The Ninth Circuit went to great lengths to join the other circuits and hold that § 841 (and by analogy

12  §§ 952 and 960) does not violate due process.  United States v. Buckland, 277 F.3d 1173 (9th Cir. 2002) (en

13  banc).  In substance, the Ninth Circuit stated that it and the other Courts of Appeals had erred in years of

14  precedent that committed findings of type and quantity of controlled substance to the district court at

15  sentencing or punishment.  Buckland, at 1178, n.2 (citing the various federal circuit courts that had long held

16  that Congress left findings as to type and quantity of controlled substance to the district court at sentencing).

17  Ironically, the Buckland decision turns on what "[§] 841 ... does not say."  Id., at 1179.  In other words, the

18  Buckland court construed § 841 (and by analogy would construe §§ 952 and 960) as constitutional because

19  Congress "did not purposefully remove from the jury the assessment of the facts [necessary to] increase the

20  prescribed range of penalties ...."  Id. at 1181. (internal quotation marks and citation omitted).  Yet, the

21  Buckland court's conclusion ignores the plain language of § 841(b) (as well as that of § 960(a)), see supra,

22  and the rules of statutory construction that it purports to follow.  Buckland, at 1198 (Tashima, J. dissenting).

23  The long awaited Buckland decision makes no sense.

24          The Government will no doubt argue that the Buckland decision binds this Court.  Ms. Villaescusa

25  urges this Court to reject the Buckland decision as an example of result oriented jurisprudence that

26  disregards the definition of due process outlined by the Supreme Court in Apprendi.  Apprendi announced

27  a constitutional rule that binds this Court, and this Court must follow it.

28  / / /

**IV.**

## MOTION TO DISMISS THE INDICTMENT BECAUSE THE GRAND JURY WAS NOT ASKED TO FIND THAT MS. VILLAESCUSA *KNEW* THE TYPE AND QUANTITY OF NARCOTICS INVOLVED IN THIS OFFENSE

If this Court reinterprets the type and quantity of controlled substance to be offense elements or the "functional equivalent" of offense elements that have to be alleged in the indictment, this Court must find that the statute's *mens rea* is equally applicable to these new "elements." See United States v. X-Citement Video, Inc., 513 U.S. 64 (1994); but see United States v. Carranza, 289 F.3d 634 (9th Cir. 2002). Not only must the indictment allege the type and quantity of "controlled substance" involved in the offense, the indictment must allege that the defendant knew the type and quantity involved. And, regardless of what this Court considers the elements of her alleged offense, Ms. Villaescusa has a right to a grand jury determination on each one. See United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999) ("The Fifth Amendment ... requires that a defendant be convicted only on charges considered and found by a grand jury."); see also id. (reversing because the Ninth Circuit could "only guess whether the grand jury received evidence of, and actually passed on, Du Bo's intent.") (emphasis added). Assuming that this Court upholds the constitutionality of section 841, the grand jury should have found that Ms. Villaescusa knew the type and quantity of narcotics involved in this offense. Because the grand jury made no such finding, this Court should dismiss the indictment. See Ex. A, Reporter's Partial Transcript of the Proceedings, dated January 11, 2007 (attached).

**V.**

## MOTION TO DISMISS THE INDICTMENT DUE TO A GRAND JURY VIOLATION

**A.      Introduction.**

The indictment in this case was returned by the January 2007 grand jury. United States District Court Judge Larry A. Burns voir dired and instructed the grand jury on January 11, 2007. See Ex. A, and Reporter's Transcript of Proceedings, dated January 11, 2007, attached as Exhibit B (voir dire). Judge Burns's instructions to the impaneled grand jury amount to structural error. First, Judge Burns' instructions erroneously constrains the power of the grand jury in violation of United States v. Williams, 504 U.S. 36, 49 (1992) and Vasquez v. Hillary, 474 U.S. 254 (1986). Second, Judge Burns's instructions conflict with Williams' holding that there is no duty to present exculpatory evidence to the grand jury, leaving the grand

1  jury with the erroneous impression that all evidence undercutting probable cause will be presented to them,

2  making it unnecessary for the grand jury to conduct any independent investigation of their own.

**B.**    ***Navarro-Vargas* Establishes Limits on the Ability of Judges to Constrain the Powers of the Grand Jury, Which Judge Burns Far Exceeded in His Instructions as a Whole During Impanelment.**

5  The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to

6  grand jurors in the Southern District of California.  See Navarro-Vargas II, 408 F.3d 1184.  While the Ninth

7  Circuit has thus far narrowly rejected such challenges, it has, in the course of adopting a highly formalistic

8  approach[2] to the problems posed by the instructions, endorsed many of the substantive arguments raised by

9  the defendants in those cases.  The district court's instructions in this case cannot be reconciled with the role

10  of the grand jury as set forth in Navarro-Vargas II.  Taken together, the voir dire of and instructions given

11  to the January 2007 Grand Jury, go far beyond those at issue in Navarro-Vargas, taking a giant leap in the

12  direction of a bureaucratic, deferential grand jury, focused solely upon probable cause determinations and

13  utterly unable to exercise any quasi-prosecutorial discretion.  That is not the institution the Framers

14  envisioned.  See Williams, 504 U.S. at 49.

15  Significantly, with respect to the grand jury's relationship with the prosecution, the Navarro-Vargas

16  II majority acknowledges that the two institutions perform similar functions:  "'the public prosecutor, in

17  deciding whether a particular prosecution shall be instituted or followed up, performs much the same

18  function as a grand jury.'"  Navarro-Vargas II, 408 F.3d at 1200 (quoting Butz v. Economou, 438 U.S. 478,

19  510 (1978)).  Accord United States v. Navarro-Vargas, 367 F.3d 896, 900 (9th Cir. 2004) (Navarro-Vargas

20  I) (Kozinski, J., dissenting) (The grand jury's discretion in this regard "is most accurately described as

21  prosecutorial.").  See also Navarro-Vargas II, 408 F.3d at 1213 (Hawkins, J., dissenting).  It recognizes that

22  the prosecutor is not obligated to proceed on any indictment or presentment returned by a grand jury, id.,

23  but also that "the grand jury has no obligation to prepare a presentment or to return an indictment drafted

24  by the prosecutor."  Id.  See Niki Kuckes, The Democratic Prosecutor:  Explaining the Constitutional

26  _____

27  2  See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional

28  independence.").

Function of the Federal Grand Jury, 94 Geo. L.J. 1265, 1302 (2006) (the grand jury's discretion not to indict was "'arguably . . . the most important attribute of grand jury review from the perspective of those who insisted that a grand jury clause be included in the Bill of Rights'") (quoting Wayne LaFave et al., Criminal Procedure § 15.2(g) (2d ed. 1999)).

Indeed, the Navarro-Vargas II majority agrees that the grand jury possesses all the attributes set forth in Vasquez, 474 U.S. 254. See id.

> The grand jury thus determines not only whether probable cause exists, but also whether to "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense—all on the basis of the same facts. And, significantly, the grand jury may refuse to return an indictment even "'where a conviction can be obtained.'"

Id. (quoting Vasquez, 474 U.S. at 263).

The Supreme Court has itself reaffirmed Vasquez's description of the grand jury's attributes in Campbell v. Louisiana, 523 U.S. 392 (1998), noting that the grand jury "controls not only the initial decision to indict, but also significant questions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime." Id. at 399 (citing Vasquez, 474 U.S. at 263). Judge Hawkins notes that the Navarro-Vargas II majority accepts the major premise of Vasquez: "the majority agrees that a grand jury has the power to refuse to indict someone even when the prosecutor has established probable cause that this individual has committed a crime." See id. at 1214 (Hawkins, J. dissenting). Accord Navarro-Vargas I, 367 F.3d at 899 (Kozinski, J., dissenting); United States v. Marcucci, 299 F.3d 1156, 1166-73 (9th Cir. 2002) (per curiam) (Hawkins, J., dissenting). In short, the grand jurors' prerogative not to indict enjoys strong support in the Ninth Circuit. But not in Judge Burns's instructions.

The Navarro-Vargas II majority found that the instruction in that case "leave[s] room for the grand jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous decision in Marcucci. Marcucci reasoned that the instructions do not mandate that grand jurors indict upon every finding of probable cause because the term "should" may mean "what is probable or expected." 299 F.3d at 1164 (citation omitted). That reading of the term "should" makes no sense in context, as Judge Hawkins ably pointed out. See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or

1  obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence."). See

2  also id. ("The 'word' should is used to express a duty [or] obligation.") (quoting The Oxford American

3  Diction and Language Guide 1579 (1999) (brackets in original)).

4          The debate about what the word "should" means is irrelevant here; the instructions here make no

5  such fine distinction.  Judge Burns's grand jury instructions make it painfully clear that grand jurors simply

6  may not choose not to indict in the event of what appears to them to be an unfair application of the law:

7  should "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going

8  to vote against indicting even though I think that the evidence is sufficient'...." See Ex. A at 8-9. Thus, the

9  instruction flatly bars the grand jury from declining to indict because they disagree with a proposed

10  prosecution. No grand juror would read this language as instructing, or even allowing, him or her to assess

11  "the need to indict." Vasquez, 474 U.S. at 264.

12          While Judge Burns used the word "should" instead of "shall" during voir dire with respect to whether

13  an indictment was required if probable cause existed, see Ex. A at 4, 8, in context, it is clear that he could

14  only mean "should" in the obligatory sense.  For example, when addressing a prospective juror, Judge Burns

15  not only told the jurors that they "should" indict if there is probable cause, he told them that if there is not

16  probable cause, "then the grand jury should hesitate and not indict." See id. at 8.  At least in context, it

17  would strain credulity to suggest that Judge Burns was using "should" for the purpose of "leaving room for

18  the grand jury to [indict] even if it finds [no] probable cause."  See Navarro-Vargas, 408 F.3d at 1205.

19  Clearly he was not.

20          The full passage cited above effectively eliminates any possibility that Judge Burns intended the

21  Navarro-Vargas spin on the word "should."

22          [T]he grand jury is determining really two factors: "do we have a reasonable belief that a
           crime was committed?  And second, do we have a reasonable belief that the person that they
23          propose that we indict committed the crime?"

24          If the answer is "yes" to both of those, then the case should move forward.  If the answer to
           either of the questions is "no," then the grand jury should not hesitate and not indict.
25

26  See Ex. B at 8.  Of the two sentences containing the word "should," the latter of the two essentially states

27  that if there is no probable cause, you *should* not indict.  Judge Burns could not possibly have intended to

28  "leav[e] room for the grand jury to [indict] even if it finds [no] probable cause."  See Navarro-Vargas, 408

1   F.3d at 1205 (citing <u>Marcucci</u>, 299 F.3d at 1159).  That would contravene the grand jury's historic role of

2   protecting the innocent.  <u>See, e.g.</u>, <u>United States v. Calandra</u>, 414 U.S. 338, 343 (1974) (The grand jury's

3   "responsibilities continue to include both the determination whether there is probable cause and the

4   protection of citizens against unfounded criminal prosecutions.") (citation omitted).

5       By the same token, if Judge Burns said that "the case should move forward" if there is probable

6   cause, but intended to "leav[e] room for the grand jury to dismiss even if it finds probable cause," <u>see</u>

7   <u>Navarro-Vargas</u>, 408 F.3d at 1205 (citing <u>Marcucci</u>, 299 F.3d at 1159), then he would have to have intended

8   two different meanings of the word "should" in the space of two consecutive sentences.  That could not have

9   been his intent.  But even if it were, no grand jury could ever have had that understanding.[3]  Jurors are not

10  presumed to be capable of sorting through internally contradictory instructions.  <u>See generally</u> <u>United States</u>

11  <u>v. Lewis</u>, 67 F.3d 225, 234 (9th Cir. 1995) ("where two instructions conflict, a reviewing court cannot

12  presume that the jury followed the correct one") (citation, internal quotations and brackets omitted).

13      Lest there be any room for ambiguity, on no less than four occasions, Judge Burns made it explicitly

14  clear to the grand jurors that "should" was not merely suggestive, but obligatory, on multiple occasions:

15      The first occasion occurred in the following exchange when Judge Burns conducted voir dire and

16  excused a potential juror (CSW):

17      The Court: . . . If there's probable cause, then the case should go forward.  I wouldn't want
        you to say, "Well, yeah, there's probable cause.  But I still don't like what the government
18      is doing.  I disagree with these laws, so I'm not going to vote for it to go forward."  If that's
        your frame of mind, then probably you shouldn't serve.  Only you can tell me that.
19      Prospective Juror: Well, I think I may fall in that category.
        The Court: In the latter category?
20      Prospective Juror: Yes.
        The Court: Where it would be difficult for you to support a charge even if you thought the
21      evidence warranted it?
        Prospective Juror: Yes.
22
        The Court: I'm going to excuse you then.
23
24  <u>See</u> Ex. B at 17.  There was nothing ambiguous about the word "should" in this exchange with a prospective

25  juror.  Even if the prospective juror did not like what the government was doing in a particular case, that case

26  ───────────────

27      3 This argument does not turn on Ms. Villaescusa's view that the <u>Navarro-Vargas</u>/<u>Marcucci</u>
    reading of the word "should" in the model instructions is wildly implausible.  Rather, it turns on the context
28  in which the word is employed by Judge Burns in his unique instructions, context which eliminates the
    <u>Navarro-Vargas</u>/<u>Marcucci</u> reading as a possibility.

"should go forward" and Judge Burns expressly disapproved of any vote that might prevent that. See id. ("I wouldn't want you [to vote against such a case]"). The sanction for the possibility of independent judgment was dismissal, a result that provided full deterrence of that juror's discretion and secondary deterrence as to the exercise of discretion by any other prospective grand juror.

On another occasion, in an even more explicit example of what "should" meant, Judge Burns makes clear that it there is an unbending obligation to indict if there is probable cause. Grand jurors have no other prerogative.

> Court  . . . It's not for me to say, "Well, I don't like it. So I'm not going to follow it here." You'd have a similar *obligation* as a grand juror even though you might have to grit your teeth on some cases. Philosophically, if you were a member of Congress, you'd vote against, for example, criminalizing marijuana. I don't know if that's it, but you'd vote against criminalizing some drugs.
>
> That's not what your *prerogative* is here. Your prerogative instead is act like a judge and to say, "All right. This is what I've got to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does." *And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward*.

Id. at 26-27 (emphasis added). After telling this potential juror (REA) what his obligations and prerogatives were, the Court inquired as to whether "you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?" Id. at 27. The potential juror responded: "It would depend on the case." Id. Nevertheless, that juror was excused. Id. at 28. Again, in this context, and contrary to the situation in Navarro-Vargas, "should" means "shall"; it is obligatory, and the juror has no prerogative to do anything other than indict if there is probable cause.

Moreover, as this example demonstrates, the issue is not limited to whether the grand jury believes a particular law to be "unwise." This juror said that any decision to indict would not depend on the law, but rather it would "depend on the case." Thus, it is clear that Judge Burns's point was that if a juror could not indict on probable cause for *every* case, then that juror was not fit for service. It is equally clear that the prospective juror did not dispute the "wisdom of the law;" he was prepared to indict under some factual scenarios, perhaps many. But Judge Burns did not pursue the question of what factual scenarios troubled the prospective jurors, because his message is that there is no discretion not to indict.

As if the preceding examples were not enough, Judge Burns continued to pound home the point that

1    "should" meant "shall" when he told another grand juror during voir dire: "[W]hat I have to insist on is that

2    you follow the law that's given to us by the United States Congress. We enforce the federal laws here." See

3    id. at 61.

4         And then again, after swearing in all the grand jurors who had already agreed to indict in every case

5    where there was probable cause, Judge Burns reiterated that "should" means "shall" when he reminded them

6    that "your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence

7    is sufficient . . . . Instead your *obligation* is . . . not to bring your personal definition of what the law ought

8    to be and try to impose that through applying it in a grand jury setting." See Ex. A at 9.

9         Moreover, Judge Burns advised the grand jurors that the were forbidden from considering the

10   penalties to which indicted persons may be subject.

11        Prospective Juror (REA): ... And as far as being fair, it kind of depends on what the case is
          about because there is a disparity between state and federal law.
12        The Court: In what regard?
          Prospective Juror: Specifically, medical marijuana.
13        The Court: Well, those things -- the consequences of your determination shouldn't concern
          you in the sense that penalties or punishment, things like that -- *we tell trial jurors, of course,*
14        *that they cannot consider the punishment or the consequence that Congress has set for these*
          *things. We'd ask you to also abide by that.* We want you to make a business-like decision
15        of whether there was a probable cause. ...

16   See Ex. B at 24-25 (emphasis added). A "business-like decision of whether there was a probable cause"

17   would obviously leave no role for the consideration of penalty information.

18        The Ninth Circuit previously rejected a claim based upon the proscription against consideration of

19   penalty information based upon the same unlikely reading of the word "should" employed in Marcucci. See

20   United States v. Cortez-Rivera, 454 F.3d 1038, 1040-41 (9th Cir. 2006). Cortez-Rivera is inapposite for two

21   reasons. First, Judge Burns did not use the term "should" in the passage quoted above. Second, that context,

22   as well as his consistent use of a mandatory meaning in employing the term, eliminate the ambiguity (if there

23   ever was any) relied upon by Cortez-Rivera. The instructions again violate Vasquez, which plainly

24   authorized consideration of penalty information. See 474 U.S. at 263.

25        Noting can mask the undeniable fact that Judge Burns explicitly instructed the jurors time and time

26   again that they had a duty, an obligation, and a singular prerogative to indict each and every case where there

27   was probable cause. These instructions go far beyond the holding of Navarro-Vargas and stand in direct

28   contradiction of the Supreme Court's decision in Vasquez. Indeed, it defies credulity to suggest that a grand

1   juror hearing these instructions, and that voir dire, could possibly believe what the Supreme Court held in

2   Vasquez:

> 3   The grand jury does not determine only that probable cause exists to believe that a defendant
> committed a crime, or that it does not.  In the hands of the grand jury lies the power to charge
> 4   a greater offense or a lesser offense; numerous counts or a single count; and perhaps most
> significant of all, a capital offense or a non-capital offense – all on the basis of the same
> 5   facts.  Moreover, "[t]he grand jury is not bound to indict in every case where a conviction
> can be obtained."

6   474 U.S. at 263 (quoting United States v. Ciambrone, 601 F.2d 616, 629 (2nd Cir. 1979) (Friendly, J.,

7   dissenting)); accord Campbell v. Louisiana, 523 U.S. 392, 399 (1998) (The grand jury "controls not only

8   the initial decision to indict, but also significant decisions such as how many counts to charge and whether

9   to charge a greater or lesser offense, including the important decision whether to charge a capital crime.").

10  Nor would the January 2007 grand jury ever believe that it was empowered to assess the "the need to indict."

11  See id. at 264.  Judge Burns's grand jury is not Vasquez's grand jury.  The instructions therefore represent

12  structural constitutional error "that interferes with the grand jury's independence and the integrity of the

13  grand jury proceeding."  See United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992).  Thus, the

14  indictment must be dismissed.  Id.

15      The Navarro-Vargas II majority's faith in the structure of the grand jury *is not* a cure for the

16  instructions' excesses.  The Navarro-Vargas II majority attributes "[t]he grand jury's discretion—its

17  independence—[to] the absolute secrecy of its deliberations and vote and the unreviewability of its

18  decisions." 408 F.3d at 1200.  As a result, the majority discounts the effect that a judge's instructions may

19  have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it

20  independent." Id. at 1202 (emphases in the original).

21      Judge Hawkins sharply criticized this approach.  The majority, he explains, "believes that the

22  'structure' and 'function' of the grand jury—particularly the secrecy of the proceedings and unreviewability

23  of many of its decisions—sufficiently protects that power." See id. at 1214 (Hawkins, J., dissenting).  The

24  flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond

25  making a probable cause determination ... unconstitutionally undermines the very structural protections that

26  the majority believes save[] the instruction." Id.  After all, it is an "'almost invariable assumption of the law

27  that jurors follow their instructions.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1987)).  If that

28

1    "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described

2    in <u>Vasquez</u>.  Indeed, "there is something supremely cynical about saying that it is fine to give jurors

3    erroneous instructions because nothing will happen if they disobey them." <u>Id.</u>

4        In setting forth Judge Hawkins' views, Ms. Villaescusa understands that this Court may not adopt

5    them solely because the reasoning that supports them is so much more persuasive than the majority's

6    sophistry.  Rather, she sets them forth to urge the Court *not to extend* what is already untenable reasoning.

7        Here, again, the question is not an obscure interpretation of the word "should", especially in light

8    of the instructions and commentary by Judge Burns during voir dire discussed above—unaccounted for by

9    the Court in <u>Navarro-Vargas II</u> because they had not yet been disclosed to the defense, but an absolute ban

10   on the right to refuse to indict that directly conflicts with the recognition of that right in <u>Vasquez</u>, <u>Campbell</u>,

11   and both <u>Navarro-Vargas II</u> opinions.  <u>Navarro-Vargas II</u> is distinguishable on that basis, but not only that.

12       Judge Burns did not limit himself to denying the grand jurors the power that <u>Vasquez</u> plainly states

13   they enjoy.  He also excused prospective grand jurors who might have exercised that Fifth Amendment

14   prerogative, excusing "three [jurors] in this case, because they could not adhere to [that] principle...." <u>See</u>

15   Ex. A at 8; Ex. B at 17, 28.  The structure of the grand jury and the secrecy of its deliberations cannot

16   embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the

17   conscience of the community.  <u>See</u> <u>Navarro-Vargas II</u>, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a

18   grand jury exercising its powers under <u>Vasquez</u> "serves ... to protect the accused from the other branches

19   of government by acting as the 'conscience of the community.'") (quoting <u>Gaither v. United States</u>, 413 F.2d

20   1061, 1066 &  n.6 (D.C. Cir. 1969)).  The federal courts possess only "very limited" power "to fashion, on

21   their own initiative, rules of grand jury procedure," <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992), and,

22   here, Judge Burns has both fashioned his own rules and enforced them.

23   **C.    <u>The Instructions Conflict with *Williams*' Holding That There Is No Duty to Present</u>**
          **<u>Exculpatory Evidence to the Grand Jury.</u>**

24       In <u>Williams</u>, the defendant, although conceding that it was not required by the Fifth Amendment,

25   argued that the federal courts should exercise their supervisory power to order prosecutors to disclose

26   exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment

27   common law.  <u>See</u> 504 U.S. at 45, 51.  <u>Williams</u> held that "as a general matter at least, no such 'supervisory'

28

judicial authority exists." <u>See</u> <u>id.</u> at 47.  Indeed, although the supervisory power may provide the authority

"to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct

amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this

Court and by Congress to ensure the integrity of the grand jury's functions,'" <u>id.</u> at 46 (citation omitted), it

does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance." <u>Id.</u>

at 47 (emphasis added).  The federal courts possess only "very limited" power "to fashion, on their own

initiative, rules of grand jury procedure." <u>Id.</u> at 50.  As a consequence, <u>Williams</u> rejected the defendant's

claim, both as an exercise of supervisory power and as Fifth Amendment common law.  <u>See</u> <u>id.</u> at 51-55.

Despite the holding in <u>Williams</u>, the instructions here assure the grand jurors that prosecutors would

present to them evidence that tended to undercut probable cause.  <u>See</u> Ex. A at 20.

> Now, again, this emphasizes the difference between the function of the grand jury and the
> trial jury.  You're all about probable cause.  If you think that there's evidence out there that
> might cause you say "well, I don't think probable cause exists," then it's incumbent upon you
> to hear that evidence as well.  As I told you, in most instances, *the U.S. Attorneys are duty-*
> *bound to present evidence that cuts against what they may be asking you to do if they're*
> *aware of that evidence.*

<u>Id.</u> (emphasis added).  Moreover, Judge Burns later returned to the notion of the prosecutors and their duties,

advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will

be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." <u>See</u> <u>id.</u> at 27.

The Ninth Circuit has already concluded it is likely this final comment is "unnecessary." <u>See</u> <u>Navarro-</u>

<u>Vargas</u>, 408 F.3d at 1207.

This particular instruction has a devastating effect on the grand jury's protective powers, particularly

if it is not true.  It begins by emphasizing the message that <u>Navarro-Vargas II</u> somehow concluded was not

conveyed by the previous instruction: "You're all about probable cause." <u>See</u> Ex. A at 20.  Thus, once again,

the grand jury is reminded that they are limited to probable cause determinations (a reminder that was

probably unnecessary in light of the fact that Judge Burns had already told the grand jurors that they likely

would be excused if they rejected this limitation).  The instruction goes on to tell the grand jurors that they

should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor

will present it.  The end result, then, is that grand jurors should consider evidence that goes against probable

cause, but, if none is presented by the government, they can  presume that there is none.  After all, "in most

1  instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking

2  you to do if they're aware of that evidence." See id. Moreover, during voir dire, Judge Burns informed the

3  jurors that "my experience is that the prosecutors don't play hide-the-ball. If there's something adverse or

4  that cuts against the charge, you'll be informed of that. *They have a duty to do that*." See Ex. B at 14-15

5  (emphasis added). Thus, if the exculpatory evidence existed, it necessarily would have been presented by

6  the "duty-bound" prosecutor, because the grand jurors "can expect that the U.S. Attorneys that will appear

7  in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented

8  to you." See Ex. A at 27.

9       These instructions create a presumption that, in cases where the prosecutor does not present

10  exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no

11  exculpatory evidence was presented, would proceed along these lines:

12       (1)   I have to consider evidence that undercuts probable cause.

13       (2)   The candid, honest, duty-bound prosecutor would, in good faith, have presented any such

14             evidence to me, if it existed.

15       (3)   Because no such evidence was presented to me, I may conclude that there is none.

16  Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the

17  evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-

18  bound prosecutor would have presented it.

19       The instructions, therefore, discourage investigation—if exculpatory evidence were out there, the

20  prosecutor would present it, so investigation is a waste of time—and provide additional support to every

21  probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side

22  of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under

23  the Fifth Amendment.

24       This is particularly troubling in this case, because government-produced discovery makes clear that

25  the prosecutors in this case had ample exculpatory evidence at their disposal by the time the grand jury met

26  to pass on Ms. Villaescusa's indictment. Ms. Villaescusa denied knowledge of the marijuana in the face of

27  skilled and aggressive interrogation. Given Judge Burns's instructions, if the prosecutors in Ms.

28  Villaescusa's case did not in fact present exculpatory evidence, the grand jury would have been misled into

1    believing that there was no exculpatory evidence, because the prosecutor would not—as Judge Burns put

2    it—"play hide the ball."    <u>See</u> Ex. B at 14-15.  Thus, in this case, unless the prosecutor presented the

3    exculpatory evidence available to him, including the evidence of Ms. Villaescusa's repeated denials, the

4    grand jury was fatally misled.

5        Unless the prosecutor concedes that the grand jury was not, in fact, presented with exculpatory

6    evidence in the prosecutor's possession (in which case, the indictment should be dismissed), Ms. Villaescusa

7    moves for production of Ms. Villaescusa's grand jury proceeding so that this issue can be resolved on the

8    full evidence.

9                                        **VI.**

10                                   <u>**CONCLUSION**</u>

11       For the foregoing reasons, Ms. Villaescusa respectfully requests that the Court grant the above

12    motions.

13                                            Respectfully submitted,

14

15    Dated:  February 22, 2008            *s/ Candis Mitchell*
                                           **CANDIS MITCHELL**
16                                         Federal Defenders of San Diego, Inc.
                                           Attorneys for Ms. Villaescusa
17                                         Candis_Mitchell@fd.org

18

19

20

21

22

23

24

25

26

27

28