1  KAREN P. HEWITT
   United States Attorney
2  WILLIAM A. HALL, JR.
   Assistant U.S. Attorney
3  California State Bar No. 253403
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7046/(619) 235-2757 (Fax)
   Email: william.a.hall@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10                                    )    Criminal Case No. 08CR0255-JLS
   UNITED STATES OF AMERICA,          )
11                                    )    DATE:        March 7, 2008
                        Plaintiff,    )    TIME:        1:00 p.m.
12                                    )    Before Honorable Janis L. Sammartino
              v.                      )
13                                    )
   VANESSA IRENE VILLAESCUSA,         )    UNITED   STATES'   STATEMENT   OF
14                                    )    FACTS   AND   MEMORANDUM   OF
                        Defendant(s). )    POINTS AND AUTHORITIES
15 _____)

16                            **I**

17                  <u>**STATEMENT OF THE CASE**</u>

18        The Defendant, Vanessa Irene Villaescusa (hereinafter "Defendant"), was charged by a

19 grand jury on January 30, 2008 with violating 21 U.S.C. §§ 952 and 960, importation of marijuana,

20 and 21 U.S.C. § 841(a)(1), possession of marijuana with the intent to distribute.  Defendant was

21 arraigned on the Indictment on February 1, 2008, and entered a plea of not guilty.

22                            **II**

23                  <u>**STATEMENT OF FACTS**</u>

24        Defendant was apprehended on the evening of January 17, 2008 by United States Customs

25 and Border Protection ("CBP") Officers at the Calexico, California West Port of Entry.  There,

26

27

28                            3

1 | Defendant entered the vehicle inspection lanes as the driver and sole occupant of a 1998 Chevrolet

2 | Malibu ("the vehicle").

3 | At primary inspection, Defendant gave a negative Customs declaration to a CBP Officer.

4 | Defendant stated that she had been visiting a friend in Mexico, and that she had purchased the

5 | vehicle several days earlier, although it was not registered in her name.  During the inspection,

6 | Defendant would not make eye contact with the CBP Officer.  Defendant and the vehicle were then

7 | referred to the secondary lot for further inspection.

8 | At secondary inspection, Defendant provided another negative Customs declaration.

9 | Defendant stated that she was headed to El Centro, California, her claimed city of residence, and

10 | that she had just purchased the vehicle from a neighbor in El Centro.  Defendant again avoided eye

11 | contact with the questioning CBP Officer, and could not stand still.  The CBP Officer asked

12 | Defendant to open the hood of the vehicle; as she did so, her hands were shaking.  The CBP

13 | Officer then observed a wire holding down the rear seat of the vehicle.  When he forced the corner

14 | of the rear seat up, he discovered a shiny plastic package.

15 | A subsequent inspection of the vehicle revealed a total of fifty packages within the vehicle,

16 | weighing in total approximately 45.32 kilograms (99.70 pounds), which were recovered from

17 | within the engine compartment firewall, under the rear seat, in the rear seat back rest, in the rear

18 | driver's side quarter panel, and in the rear passenger door.  A sample of the substance inside the

19 | packages tested positive for marijuana.

20 | Defendant was then arrested.  In a post-Miranda statement, she denied knowledge of the

21 | marijuana in the vehicle, but admitted that she would be paid $1000 USD for driving the vehicle

22 | into the United States.

23 | //

24 | //

25 | //

26 | //

27 |

28 | 4

**III**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED**

Defendant moves for the suppression of Defendant's post-Miranda statement to agents, asserting that the statement was involuntary and that Defendant's Miranda waiver was not knowingly and voluntarily given.  Defendant fails to show that the post-arrest waiver was not knowingly, voluntarily, and intelligently made.  Defendant's motion to suppress statements should be denied without an evidentiary hearing.

**1.    Post-Miranda Statements**

After being placed under arrest, Defendant was questioned by Special Agents from U.S. Immigration and Customs Enforcement ("ICE").  Defendant was advised of her Miranda rights, which she acknowledged and waived, and then gave a statement.  Defendant moves to suppress statements and requests that the government prove that all statements were voluntarily made, and made after a knowing and intelligent Miranda waiver.  Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary.

a.    Knowing, Intelligent, and Voluntary Miranda Waiver

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of Miranda rights, and was not elicited by improper coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the "absence of police overreaching").

A valid Miranda waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full

1  awareness of both the nature of the right being abandoned and the consequences of the decision

2  to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden

3  of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373.

4  In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality

5  of the circumstances surrounding the interrogations.  See Moran v. Burbine, 475 U.S. at 421.

6  Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d

7  1070, 1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not

8  have trouble understanding questions, gave coherent answers, and did not ask officers to notify

9  parents), (2) the defendant's familiarity with the criminal justice system (see United States v.

10  Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was

11  familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda

12  waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda

13  waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805

14  (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant

15  signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and

16  the interrogation or confession.  See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995)

17  (valid waiver despite 15-hour delay between Miranda warnings and interview). Furthermore, if

18  there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally

19  not required unless an "appreciable time" elapses between interrogations.  See United States v.

20  Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

21      Here, the agents scrupulously honored the letter and spirit of Miranda in carefully advising

22  Defendant of her Miranda rights prior to any post-arrest custodial interrogation.  As evidenced by

23  a signed I-214 form, Defendant was advised of her Miranda rights before the interrogation.

24  Defendant agreed to waive her Miranda rights prior to questioning.  Based on the totality of the

25  circumstances, Defendant's statements should not be suppressed because her Miranda waiver was

26  knowing, intelligent, and voluntary.

27

28                                         6

b.    Defendant's Statements Were Voluntary

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of <u>Miranda</u> rights. <u>See</u> <u>Derrick v. Peterson</u>, 924 F.2d 813, 820 (9th Cir. 1990).   Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." <u>United States v. Doe</u>, 155 F.3d 1070, 1074(9th Cir. 1998)(<u>en banc</u>).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure."  <u>United States v. Crawford</u>, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting <u>United States v. Haswood</u>, 350 F.3d 1024, 1027 (9th Cir. 2003)).   In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" <u>Clark v. Murphy</u>, 331 F.3d 1062, 1072 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003) (<u>quoting</u> <u>Haynes v. Washington</u>, 373 U.S. 503, 513 (1963)).   Psychological coercion invokes no per se rule. <u>United States v. Miller</u>, 984 F.2d 1028, 1030 (9th Cir. 1993).   Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant."  <u>Id.</u> at 1031 (<u>citing</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226-27 (1973)).

In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b).  <u>United States v. Andaverde</u>, 64 F.3d 1305, 1311 (9th Cir. 1995).   These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5)  whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.  18 U.S.C. § 3501(b).  All five statutory factors

7

under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made.  See Andaverde, 64 F.3d at 1313.

As discussed above, Defendant was read her Miranda rights pre-interview.  After Defendant acknowledged her Miranda rights, a dialogue ensued between the ICE agents and Defendant, whereupon Defendant decided to make a statement without having an attorney present.  Defendant clearly understood her Miranda rights and agreed to waive those rights.  See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002).  Defendant's statements were not the product of physical intimidation or psychological pressure of any kind by any government agent.  There is no evidence that Defendant's will was overborne at the time of her statements.  Consequently, Defendant's motion to suppress her statements as involuntarily given should be denied.

## 2.    There Is No Need for an Evidentiary Hearing

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion.  See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991); Crim. L.R. 47.1.  The local rule further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."

No rights are infringed by the requirement of such a declaration.  Requiring a declaration from a defendant in no way compromises Defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the United States at trial over a defendant's objection.  See Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress).  Moreover, Defendant has as much information as the United States in regards to the statements she made.  See Batiste, 868 F.2d at 1092.  At least in the

1   context of motions to suppress statements, which require police misconduct suffered by Defendant

2   while in custody, Defendant certainly should be able to provide the facts supporting the claim of

3   misconduct.

4          Finally, any objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every case

5   is of no merit.  Section 3501 requires only that the Court make a pretrial determination of

6   voluntariness "out of the presence of the jury."  Nothing in section 3501 betrays any intent by

7   Congress to alter the longstanding rule vesting the form of proof on matters for the court in the

8   discretion of the court.  Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate

9   rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

10         The Ninth Circuit has expressly stated that a United States proffer based on the statement

11  of facts attached to the complaint is alone adequate to defeat a motion to suppress where the

12  defense fails to adduce specific and material facts.  See Batiste, 868 F.2d at 1092.  Moreover, the

13  Ninth Circuit has held that a district court may properly deny a request for an evidentiary hearing

14  on a motion to suppress evidence because the defendant did not properly submit a declaration

15  pursuant to a local rule.  See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991);

16  United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion

17  to suppress need be held only when the moving papers allege facts with sufficient definiteness,

18  clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); see

19  also United States v. Walczak, 783 F. 2d 852, 857 (9th Cir. 1986) (holding that evidentiary

20  hearings on a motion to suppress are required if the moving papers are sufficiently definite,

21  specific, detailed, and nonconjectural to whether contested issues of fact exist).  Even if Defendant

22  provides factual allegations, the Court may still deny an evidentiary hearing if the grounds for

23  suppression consist solely of conclusory allegations of illegality.  See United States v. Wilson, 7

24  F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson did not abuse his

25  discretion in denying a request for an evidentiary hearing where the appellant's declaration and

26

27

28                                              9

1    points and authorities submitted in support of motion to suppress indicated no contested issues of

2    fact).

3        As Defendant in this case has failed to provide declarations alleging specific and material

4    facts, the Court would be within its discretion to deny Defendant's motion based solely on the

5    statement of facts attached to the complaint in this case, without any further showing by the United

6    States. Defendant's allegation of a <u>Miranda</u> violation is based upon boilerplate language that fails

7    to demonstrate there is a disputed factual issue requiring an evidentiary hearing. <u>See</u> <u>Howell</u>, 231

8    F.3d at 623.

9        As such, this Court should deny Defendant's motion to suppress and her request for an

10   evidentiary hearing.

11   **B.    THE DRUG STATUTES ARE CONSTITUTIONAL, AND THE INDICTMENT
12           NEED NOT ALLEGE KNOWLEDGE OF THE AMOUNT AND TYPE OF
             NARCOTICS**

13       The Ninth Circuit has already squarely and repeatedly rejected the claim that the federal

14   drug laws, including 21 U.S.C. §§ 841, 952, and 960, are facially unconstitutional.  <u>See</u> <u>United</u>

15   <u>States v. Jimenez</u>, 300 F.3d 1166, 1171 (9th Cir. 2002); <u>United States v. Marcucci</u>, 299 F.3d 1156,

16   1165 (9th Cir.), <u>cert. denied</u>, 123 S. Ct. 1600 (2002); <u>United States v. Carranza</u>, 289 F.3d 634, 643

17   (9th Cir.), <u>cert. denied</u>, 537 U.S. 1037 (2002); <u>United States v. Buckland</u>, 289 F.3d 558, 562 (9th

18   Cir.) (en banc), <u>cert. denied</u>, 535 U.S. 1105 (2002); <u>United States v. Mendoza-Paz</u>, 286 F.3d 1104,

19   1109-10 (9th Cir.), <u>cert. denied</u>, 537 U.S. 1038 (2002); <u>United States v. Varela- Rivera</u>, 279 F.3d

20   1174, 1175 n.1 (9th Cir. 2002).  Defendant's arguments to the contrary are meritless.

21       Furthermore, in <u>Carranza</u>, the Ninth Circuit reaffirmed longstanding precedent that the

22   United States need not prove that defendants knew the type or quantity of controlled substance

23   they were smuggling in order to sustain a conviction under the federal drug statutes.  <u>Id.</u> at 643-44.

24   The United States must prove only that defendants knew they were smuggling some type of

25   controlled substance.  <u>Id.</u> at 644.  Any argument that <u>Carranza</u> should be ignored was rejected by

26

27

28                                                      10

1    the Ninth Circuit in <u>United States v. Hernandez</u>, 322 F.3d 592, 602 (9th Cir. 2003).   Again,

2    Defendant's argument has no merit.

3
     **C.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE**
4    **INDICTMENT SHOULD NOT BE DISMISSED**

5        **1.    Introduction**

6        Defendant makes contentions relating to two separate instructions given to the grand jury

7    during its impanelment by United States District Judge Larry A. Burns on January 10, 2007.

8    Defendant's Memorandum of Points and Authorities filed February 22, 2008 at 6-19 (hereafter

9    "Memorandum").[1]   Although recognizing that the Ninth Circuit in <u>United States v. Navarro-</u>

10   <u>Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions

11   constitutional, Defendant here contends Judge Burns went beyond the text of the approved

12   instructions, and by so doing rendered them improper to the point that the Indictment should be

13   dismissed.

14       In making her arguments concerning the two separate instructions, Defendant urges this

15   Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of

16   which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).   Concerning the

17   first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its

18   supervisory powers over grand jury procedures.   Memorandum at 14-15.   This is a practice the

19   Supreme Court discourages as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S.

20   36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it

21

22   _____

23       [1] Defendant supplies a partial transcript of the grand jury proceedings which records the
     instructions to the impaneled grand jurors after the voir dire had been conducted.   <u>See</u> Exhibit A
24   to Memorandum (hereafter "Exhibit A").   Defendant also supplies a partial transcript of the grand
     jury proceedings which records the voir dire of several potential witnesses.   <u>See</u> Exhibit B to
25   Memorandum (hereafter "Exhibit B").   To amplify the record herein, the United States is
     supplying a redacted supplemental transcript which records relevant portions of the voir dire
26   proceedings.   <u>See</u> Appendix to United States' Response and Opposition to Defendant's Motions
     (hereafter "United States' Appendix").
27

28                                        11

should come as no surprise that we have been reluctant to invoke the judicial supervisory power

as a basis for prescribing modes of grand jury procedure."). Id. Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice – that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]" – a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base her contentions on the Constitution as a reason to dismiss the Indictment. See Memorandum at 16 ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment."). Concerning that kind of a contention, Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[2]

> The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when

---

[2] In Isgro, the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

confronted with complex legal problems.   It is entirely proper that you should receive this assistance.  If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/] 408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.  The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

//

//

---

   [3] The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional. For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

13

**2.     The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Exhibit A at 8-9.[4]

In line with Navarro-Vargas, Judge Burns instructed the grand jurors that they were forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you." Exhibit A at 8. Defendant claims, however, that the instructions "make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient. . . .'" Memorandum at 9. Defendant contends that this addition to the approved instruction "flatly bars the grand jury from declining to indict because the

---

[4] The United States' Appendix recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted to include redaction of the individual names, so as to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the supplemental transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2; 38, line 9; and 44, line 17.

14

1  grand jurors disagree with a proposed prosecution." Id. Defendant further contends that the flat

2  prohibition was preemptively reinforced by Judge Burns when excused prospective grand jurors.

3      In concocting her theory of why Judge Burns erred, Defendant posits that the expanded

4  instruction renders irrelevant the debate about what the word "should" means. Memorandum at

5  11. Defendant contends that "the instruction flatly bars the grand jury from declining to indict

6  because they disagree with a proposed prosecution." Id. This argument mixes-up two of the

7  holdings in Navarro-Vargas in the hope they will blend into one. They do not.

8      Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom

9  of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted

10  by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

11  expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact

12  in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within

13  his rights, and within the law, when he excused the three prospective grand jurors because of their

14  expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to

15  remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will

16  establish, this reminder did not pressure the grand jurors to give up their discretion not to return

17  an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury

18  from declining to indict because the grand jurors disagree with a proposed prosecution, because

19  they do not say that. That aspect of a grand jury's discretionary power (i.e., disagreement with the

20  prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the

21  term "should" was germane.[5] 408 F.3d at 1204-06. This other instruction bestows discretion on

22

23      [5] That instruction is not at issue here. It read as follows:

24      [Y]our task is to determine whether the government's evidence as presented
       to you is sufficient to cause you to conclude that there is probable cause to believe
25      that the accused is guilty of the offense charged. To put it another way, you
       should vote to indict where the evidence presented to you is sufficiently strong to
26      warrant a reasonable person's believing that the accused is probably guilty of the
27                                                          (continued...)

28                                    15

the grand jury not to indict.[6/]  In finding this instruction constitutional, the court stated in words that ring true here: "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Exhibit A at 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

---

(...continued)
offense with which the accused is charged.

408 F.3d at 1187.

[6] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.   The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

16

1
2

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

3
Exhibit A at 23.

4
While the new grand jurors were told by Judge Burns that they could not question the

5
wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the

6
discretion not to return an indictment per <u>Navarro-Vargas</u>. Further, if a potential grand juror could

7
not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be

8
dismissed as a potential jury nullification advocate. <u>See</u> <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-

9
80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other

10
indictment by this Court exercising its supervisory powers.

11
Further, a reading of the dialogues between Judge Burns and the three excused jurors found

12
in the supplemental transcript excerpts (<u>see</u> United States' Appendix) reflects a measured,

13
thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury

14
because of their views. Judge Burns' reference back to those three colloquies cannot be construed

15
as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their

16
duties.

17
Finally, even if there was an error, Defendant has not demonstrated she was actually

18
prejudiced thereby, a burden she has to bear. "Absent such prejudice – that is, absent 'grave' doubt

19
that the decision to indict was free from the substantial influence of [the misconduct]' – a dismissal

20
is not warranted." <u>Isgro</u>, 974 F.2d at 1094.

21
22
**3.      The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution**

23
Concerning the new grand jurors' relationship to the United States Attorney and the

24
Assistant U.S. Attorneys, Judge Burns variously stated:

25
> [T]here's a close association between the grand jury and the U.S. Attorney's Office.

26
27
> . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

28
17

Exhibit A at 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.  They generally work together.

Exhibit A at 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Exhibit A at 20.[7]

> As a practical matter, you will work closely with government lawyers.  The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters.  It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone.  If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Exhibit A at 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Memorandum at 17.  Defendant then ties this statement to the later instruction which "advis[ed]

---

[7] Just prior to this instruction, Judge Burns had informed the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

18

the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" Id.

From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none.
>
> Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.
>
> The instructions therefore discourage investigation – if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

Memorandum at 16.[8/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the

---

[8] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

1   prosecutor can be said to have a binding obligation to present it."[9/] (emphasis added)).  See also

2   United States v. Haynes, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the

3   government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

4   prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury."

5   (citing Williams) (emphasis added)).

6         However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge

7   Burns was a member of the United States Attorney's Office, and made appearances in front of the

8   federal grand jury.[10/]  As such he was undoubtedly aware of the provisions in the United States

9   Attorneys' Manual ("USAM").[11/]  Specifically, it appears he is aware of USAM Section 9-11.233,

10  which states:

11         In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court
           held that the Federal courts' supervisory powers over the grand jury did not include
12         the power to make a rule allowing the dismissal of an otherwise valid indictment
           where the prosecutor failed to introduce substantial exculpatory evidence to a grand
13         jury. It is the policy of the Department of Justice, however, that when a prosecutor
           conducting a grand jury inquiry is personally aware of substantial evidence that
14

15  ─────────────────────

16         [9]  Note that in Williams the Court established:

17         Respondent does not contend that the Fifth Amendment itself obliges the
           prosecutor to disclose substantial exculpatory evidence in his possession to the
18         grand jury.  Instead, building on our statement that the federal courts "may, within
           limits, formulate procedural rules not specifically required by the Constitution or
19         the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is
           supported by the courts' "supervisory power."
20

21  504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no
    authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent
22  supervisory authority over their own proceedings."  504 U.S. at 55.  See also United States v.
    Haynes, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in Isgro used
23  Williams' holding that the supervisory powers would not be invoked to ward off an attack on
    grand jury procedures couched in constitutional terms.  974 F.2d at 1096.
24

25         [10]  He recalled those days when instructing the new grand jurors.  Exhibit A at 12, 14-16,
    17-18.
26

27         [11]   The USAM is available on the World Wide Web at www.usdoj.gov/usao/
    eousa/foia_reading_room/ usam/index.html.

28                                            20

directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[12]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ."  (Emphasis added.)[13]

The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[14]  If it does exist, as mandated by the USAM, the

---

[12] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm.  Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the Internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[13] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm.  Similarly, this new section does not bestow any procedural or substantive rights on defendants.

Under this policy, the government's disclosure will exceed its constitutional obligations.  This expanded disclosure policy, however, does not create a general right of discovery in criminal cases.  Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶"E".  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm. htm.

[14] Recall Judge Burns also told the grand jurors that:

(continued...)

21

evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[15/]  There is nothing wrong  in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything  to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that

_____

(...continued)

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

[15]  Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

22

1    information does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly

2    rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").

3    That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory

4    evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from

5    reaping any benefits from the self-imposed policy.[16]  Therefore, while the "duty-bound" statement

6    was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors

7    of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions

8    which requires dismissal of the indictment in this case or any case.  The grand jurors were

9    repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys,"

10   which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not

11   vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands

12   between the government and the accused and is independent," which was also required by

13   Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does

14   not mean the instructions were constitutionally defective requiring dismissal of this indictment or

15   any indictment.

16          The "duty bound" statement constitutional contentions raised by Defendant do not indicate

17   that the "'structural protections of the grand jury have been so compromised as to render the

18   proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

19   "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

20   pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

21   grand jury is substantially infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this

22   Indictment, or any other indictment, need not be dismissed.

23   //

24   //

25

26          [16]  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
     failure to present exculpatory information to a grand jury per Williams, he or she could lose his
27   or her job with the United States Attorney's Office for such a failure per the USAM.

28                                            23

## D.    DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE

### 1.    The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure

The government has disclosed, or will disclose well in advance of trial, any statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or recorded statements, written records containing substance of Defendant's oral statements *in response to government interrogation*, and Defendant's grand jury testimony).

#### a.    The Government Will Comply With Rule 16(a)(1)(D)

Defendant has already been provided with his or her own "rap" sheet and the government will produce any additional information it uncovers regarding Defendant's criminal record. Any subsequent or prior similar acts of Defendant that the government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports, at a reasonable time in advance of trial.

#### b.    The Government Will Comply With Rule 16(a)(1)(E)

The government will permit Defendant to inspect and copy or photograph all books, papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are material to the preparation of Defendant's defense or are intended for use by the government as evidence-in-chief at trial or were obtained from or belong to Defendant.

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution, with the following exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days, and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they existed, are frequently kept for only a short period of time and may no longer be available. Counsel should contact the Assistant United States Attorney assigned to the case two weeks before

24

1  the scheduled trial date and the Assistant will make arrangements with the case agent for counsel

2  to view all evidence within the government's possession.

3             c.     The Government Will Comply With Rule 16(a)(1)(F)

4        The government will permit Defendant to inspect and copy or photograph any results or

5  reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof,

6  that are within the possession of the government, and by the exercise of due diligence may become

7  known to the attorney for the government and are material to the preparation of the defense or are

8  intended for use by the government as evidence-in-chief at the trial.  Counsel for Defendant should

9  contact the Assistant United States Attorney assigned to the case and the Assistant will make

10  arrangements with the case agent for counsel to view all evidence within the government's

11  possession.

12

13             d.     The Government Will Comply With Its Obligations Under <u>Brady v.</u>
                 <u>Maryland</u>

14        The government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>,

15  373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory

16  evidence within its possession that is material to the issue of guilt or punishment.  Defendant,

17  however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to

18  the accused, or that pertains to the credibility of the government's case.  As stated in <u>United States</u>

19  <u>v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

20          [T]he prosecution does not have a constitutional duty to disclose every bit of
        information that might affect the jury's decision; it need only disclose information

21          favorable to the defense that meets the appropriate standard of materiality.

22  611 F.2d at 774-775 (citations omitted).  <u>See</u> <u>also</u> <u>United States v. Sukumolachan</u>, 610 F.2d 685,

23  687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not

24  exist); <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not create any

25  pretrial privileges not contained in the Federal Rules of Criminal Procedure).

26  //

27

28                              25

1            e.      Discovery Regarding Government Witnesses

2            (1)     Agreements.   The government has disclosed or will disclose the

3 terms of any agreements by Government agents, employees, or attorneys with witnesses that testify

4 at trial.  Such information will be provided at or before the time of the filing of the Government's

5 trial memorandum.[17]  The government will comply with its obligations to disclose impeachment

6 evidence under Giglio v. United States, 405 U.S. 150 (1972).

7            (2)     Bias or Prejudice.   The government has provided or will provide

8 information related to the bias, prejudice or other motivation to lie of government trial witnesses

9 as required in Napue v. Illinois, 360 U.S. 264 (1959).

10            (3)     Criminal Convictions.    The government has produced or will

11 produce any criminal convictions of government witnesses plus any *material* criminal acts which

12 did not result in conviction.  The government is not aware that any prospective witness is under

13 criminal investigation.

14            (4)     Ability to Perceive.   The government has produced or will produce

15 any evidence that the ability of a government trial witness to perceive, communicate or tell the

16 truth is impaired or that such witnesses have ever used narcotics or other controlled substances,

17 or are alcoholics.

18            (5)     Witness List.  The government will endeavor to provide Defendant

19 with a list of all witnesses which it intends to call in its case-in-chief at the time the government's

20 trial memorandum is filed, although delivery of such a list is not required.  See United States v.

21 Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986);

22 United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant, however, is not entitled to

23 the production of addresses or phone numbers of possible government witnesses.  See United

24 ————————————

25      [17]  As with all other offers by the government to produce discovery earlier than it is required to do, the offer is made without prejudice.  If, as trial approaches, the government is not

26 prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the government reserves the right to withhold the requested material until the

27 time it is required to be produced pursuant to discovery laws and rules.

28                             26

1    States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert. denied, 419 U.S. 834 (1974).

2    Defendant has already received access to the names of potential witnesses in this case in the

3    investigative reports previously provided to him or her.

4            (6)    Witnesses Not to Be Called.  The government is not required to

5    disclose all evidence it has or to make an accounting to Defendant of the investigative work it has

6    performed.  Moore v. Illinois, 408 U.S. 786, 795 (1972); see  United States v. Gardner, 611 F.2d

7    770, 774-775 (9th Cir. 1980).  Accordingly, the government objects to any request by Defendant

8    for discovery concerning any individuals whom the government does not intend to call as

9    witnesses.

10           (7)    Favorable Statements.  The government has disclosed or will

11   disclose the names of witnesses, if any, who have made favorable statements concerning Defendant

12   which meet the requirements of Brady.

13           (8)    Review of Personnel Files.  The government has requested or will

14   request a review of the personnel files of all federal law enforcement individuals who will be called

15   as witnesses in this case for Brady material.  The government will request that counsel for the

16   appropriate federal law enforcement agency conduct such review.   United States v. Herring, 83

17   F.3d 1120 (9th Cir. 1996); see, also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir.

18   1992); United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

19         Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v.

20   Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable

21   to the defense that meets the appropriate standard of materiality . . ."  United States v. Cadet, 727

22   F.2d at 1467, 1468.  Further, if counsel for the United States is uncertain about the materiality of

23   the information within its possession in such personnel files, the information will be submitted to

24   the Court for in camera inspection and review.

25           (9)    Government Witness Statements.  Production of witness statements

26   is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies

27

28                                            27

1    on direct examination. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986); <u>United States</u>

2    <u>v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and

3    therefore subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject

4    to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under

5    the Act.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556-57 (9th Cir. 1979).

6         The government reserves the right to withhold the statements of any particular witnesses

7    it deems necessary until after the witness testifies.  Otherwise, the government will disclose the

8    statements of witnesses at the time of the filing of the government's trial memorandum, provided

9    that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal

10   Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse

11   <u>Jencks</u>" statements at that time.

12
13                          f.    The Government Objects To The Full Production Of Agents' Handwritten
                                  Notes At This Time

14        Although the government has no objection to the preservation of agents' handwritten notes,

15   it objects to requests for full production for immediate examination and inspection.  If certain

16   rough notes become relevant during any evidentiary proceeding, those notes will be made

17   available.

18        Prior production of these notes is not necessary because they are not "statements" within

19   the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a

20   witness' assertions *and* they have been approved or adopted by the witness.  <u>United States v.</u>

21   <u>Spencer</u>, 618 F.2d 605, 606-607 (9th Cir. 1980); <u>see</u> <u>also</u> <u>United States v. Griffin</u>,  659 F.2d 932,

22   936-938 (9th Cir. 1981).

23                          g.    All Investigatory Notes and Arrest Reports

24        The government objects to any request for production of all arrest reports, investigator's

25   notes, memos from arresting officers, and prosecution reports pertaining to Defendant.  Such

26   reports, except to the extent that they include <u>Brady</u> material or the statements of Defendant, are

27
28                                         28

1    protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in

2    connection with the investigation or prosecution of the case."

3        Although agents' reports may have already been produced to the defense, the government

4    is not required to produce such reports, except to the extent they contain <u>Brady</u> or other such

5    material.  Furthermore, the government is not required to disclose all evidence it has or to render

6    an accounting to Defendant of the investigative work it has performed.  <u>Moore v. Illinois</u>, 408 U.S.

7    786, 795 (1972); <u>see</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980).  If the

8    United States intends to introduce TECS information at trial, discovery of the relevant TECS

9    reports will be made at least by the time of the filing of its trial memorandum.

10                    h.        <u>Expert Witnesses</u>.

11        Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial

12    memorandum, the government will provide the defense with notice of any expert witnesses the

13    testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of

14    Evidence in its case-in-chief.  Such notice will describe the witnesses' opinions, the bases and the

15    reasons therefor, and the witnesses' qualifications.  Reciprocally, the government requests that the

16    defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

17                    i.        <u>Information Which May Result in Lower Sentence</u>.

18        Defendant has claimed or may claim that the government must disclose information about

19    any cooperation or any attempted cooperation with the government as well as any other

20    information affecting Defendant's sentencing guidelines because such information is discoverable

21    under <u>Brady v. Maryland</u>.  The government respectfully contends that it has no such disclosure

22    obligations under <u>Brady</u>.

23        The government is not obliged under <u>Brady</u> to furnish a defendant with information which

24    he or she already knows.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), <u>cert.</u>

25    <u>denied</u>, 479 U.S. 1094 (1987); <u>United States v. Prior</u>, 546 F.2d 1254, 1259 (5th Cir. 1977).  <u>Brady</u>

26    is a rule of disclosure.  There can be no violation of <u>Brady</u> if the evidence is already known to

27

28                                        29

1    Defendant.    Assuming that Defendant did not already possess the information about factors

2    which might affect their respective guideline range, the government would not be required to

3    provide information bearing on Defendant's mitigation of punishment until after Defendant's

4    conviction or plea of guilty and prior to his sentencing date.  "No [Brady] violation occurs if the

5    evidence is disclosed to the defendant at a time when the disclosure remains of value."  United

6    States v. Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

7
8    **E.    RE-WEIGHING AND RETESTING THE EVIDENCE IS UNNECESSARY AND
       NOT REQUIRED**

9    Defendant has requested that the Court issue an order to retest and re-weigh the evidence.

10   Although the Government does not oppose Defendant's right pursuant to Fed. R. Crim. P. 16 to

11   inspect and examine the seized evidence, Defendant provides no justifiable basis to retest and re-

12   weigh the evidence.  This Court is not required to order the retesting and re-weighing of the

13   evidence, and such an order would constitute a waste of Government resources and an unnecessary

14   delay in the case.

15   District courts have discretion to deny a defendant's request to retest and/or re-weigh

16   evidence.  See  United States v. Garcia, 900 F.2d 571, 574 (2d Cir. 1990); see also  United States

17   v. Orozco-Rodriguez, 60 F.3d 705, 707 (10th Cir. 1995); United States v. Small, 74 F.3d 1276,

18   1287 (D.C. Cir. 1996).  Where nothing is presented to raise a "reasonable dispute" over the weight

19   of drugs, a district court does not abuse its discretion in refusing to order the re-weigh.  Garcia, 900

20   F.2d at 574.  For instance, unless a court has reason to believe that any discrepancy in the weight

21   of the drugs is enough to make a defendant eligible for a lower sentence or have a lower mandatory

22   minimum apply to the defendant's case, it is within the court's discretion to deny a defendant's

23   request to re-weigh the evidence.  See Orozco-Rodriguez, 60 F.3d at 707; Small, 74 F.3d at 1287

24   (holding that the district court did not abuse its discretion in denying the defendant's motion to re-

25   weigh the drugs where the defendant failed to provide any reason to dispute the Drug Enforcement

26   Administration's laboratory analysis and where the defendant had the opportunity to cross-examine

27
28                                                     30

1    the DEA chemist at trial).  The simple fact that the weight of the drugs at issue may be "close to

2    the line" between two guideline ranges or a mandatory minimum cutoff does not raise a

3    "reasonable dispute."  Garcia, 900 F.2d at 575 (affirming district court's denial of the defendant's

4    request to re-weigh crack cocaine at time of sentencing where weight of drugs was only 9.3

5    milligrams over the applicable guideline range minimum).

6          Defendant has not presented any evidence or argument to raise a "reasonable dispute" about

7    the weight or purity of drugs at issue.  Unless and until such a possibility can be established, the

8    Court should exercise its clear discretion to deny her request for a retest and re-weigh of the drugs.

9    See Orozco-Rodriguez, 60 F.3d at 707; Small, 74 F.3d at 1287; Garcia, 900 F.2d at 574.  Such an

10   order without a showing of a "reasonable dispute" would amount to an unnecessary expenditure

11   of Government resources and delay in this case.

12         It should be noted that the Ninth Circuit has, on at least one occasion, held that, in the

13   context of a supervised release revocation proceeding, a supervisee is entitled to retest positive

14   urine samples.  United States v. Martin, 984 F.2d 308 (9th Cir. 1993).  That case, however, is

15   distinguishable from the present circumstances.  First, in Martin, the defendant was "denied all but

16   the most cursory opportunity to impeach or refute the evidence" supporting the revocation of his

17   supervised release.  Martin, 984 F.2d at 312.  The court found it important that the only

18   Government witness available for cross-examination on the defendant's positive drug test was a

19   drug counselor who had no knowledge as to the testing procedures employed or the chain of

20   custody.  Id.  Here, there will be no such danger, as Defendant will have a full opportunity to cross-

21   examine the DEA's chemist on the procedures employed and results reached in this case.  The

22   second reason relied upon by the Martin court is also of no benefit to Defendant.  The court there

23   found that the Government failed to demonstrate that it had "good cause" to avoid the retest

24   because the Government did not provide any "conventional substitutes for live testimony."  Martin,

25   984 F.2d at 313 (quoting Gagnon v. Scarpelli, 411 U.S. 778, 783 n.5 (1973)).  In contrast, in this

26   case Defendant will have every opportunity to confront and challenge the findings made by the

27

28                                                       31

1  DEA chemist at trial.  The final reason relied upon by the <u>Martin</u> court is equally inapplicable to

2  this case.  The Ninth Circuit decided not to follow other circuits that had held that results from

3  such urinalysis tests are "so inherently reliable" that they should be accepted without any right to

4  confront the results.  Here, again, there is no such danger because there will be no infringement

5  upon Defendant's right to confront evidence presented against him.

6  **F.      NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

7       The United States does not object to the granting of leave to allow Defendant to file further

8  motions, as long as the order applies equally to both parties and additional motions are based on

9  newly discovered evidence or discovery provided by the United States subsequent to the instant

10  motion at issue.

11                                   **IV**

12                              **CONCLUSION**

13       For the foregoing reasons, the government respectfully requests that Defendant's motions,

14  except where not opposed, be denied.

15

16       DATED: February 29, 2008.

17                                   Respectfully submitted,

18                                   KAREN P. HEWITT
                                     United States Attorney

19

20                                   s/ William A. Hall, Jr.
                                     WILLIAM A. HALL, JR.

21                                   Assistant United States Attorney

22

23

24

25

26

27

28                                   32